**FILED**

NOV 13 2012

Clerk, U.S. District Court
District Of Montana
Missoula

**ROBERT S. ANDERSON**
**Special Assistant U.S. Attorney**
**District of Montana**
**Senior Counsel, Environmental Crimes Section**
**Environment and Natural Resources Division**
**U.S. Department of Justice**
**105 E. Pine St., 2nd Floor**
**Missoula, MT 59802**
**Phone: (406) 829-3322**
**FAX: (406) 542-1476**
**Email: robert.anderson8@usdoj.gov**

**MARK STEGER SMITH**
**Assistant U.S. Attorney**
**Email: mark.smith3@usdoj.gov**

**ATTORNEYS FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MONTANA

## BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | MJ12-33-Blg-CSO |
| Plaintiff, | |
| vs. | **PLEA AGREEMENT** |
| SM ENERGY CO. | |
| Defendant. | |

1



S/AUSA   DEF   DEF.ATTY.   DATE

SCANNED

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the United States of America, by Robert S. Anderson, Special Assistant United States Attorney for the District of Montana, and ~~Laura B. Weiss,~~ MARK STEGER SMITH Assistant U.S. Attorney, the defendant, SM Energy Company ("defendant"), acting through its authorized corporate representative, and the defendant's attorney, Gregory E. Goldberg, Holland & Hart, LLP, submit the following plea agreement. When in this plea agreement reference is made to any act of the defendant, such reference shall be deemed to mean any act of the officers, directors, employees, and agents of the defendant while acting within the course and scope of their employment or agency.

1. The defendant is charged by Information in this case with three Class B Misdemeanor violations of Title 16, United States Code, Sections 703, 707(a) (Migratory Bird Treaty Act).

2. The defendant's representative and counsel have read the charges against the defendant and understand the nature and elements of the crimes with which the defendant has been charged.

3. The defendant will enter voluntary pleas of guilty to the Information in this case.

4. *Nature of the Agreement*: The parties agree that this plea agreement shall be filed and become a part of the record in this case, and will be governed by

2

RSA ꠕꠕ 6L2 11/8/12
S/AUSA    DEF    DEF.ATTY.    DATE

Rule 11(c)(1)(A) and (B) of the *Federal Rules of Criminal Procedure*. The defendant understands that if the agreement is accepted by the Court, it will not have an automatic right to withdraw its plea. Rule 11(d)(2)(A), *Federal Rules of Criminal Procedure*. This plea agreement binds the government and the defendant. During the term of probation, the defendant shall provide the United States Probation Office for the District of Montana with notice of any corporate name change or any other change in corporate structure or governance that would materially affect this plea agreement and/or the Environmental Compliance Plan ("ECP"), within twenty (20) days of such change. No change in name, business reorganization, merger, change of legal status, or similar action or event shall alter the defendant's responsibilities under this plea agreement. The defendant understands and agrees that it shall not knowingly engage in any action to seek to avoid the obligations and conditions set forth in this plea agreement.

5.     *Effect of Withdrawal from the Agreement:*  The parties stipulate and agree that if the defendant moves to withdraw its guilty plea, entered pursuant to and receiving the benefits of this agreement, and if it successfully withdraws its plea either in the district court or on appeal, that this agreement will become null and void. Moreover, if the defendant at any time after judgment is entered obtains dismissal, reversal, or remand of the count of conviction for any reason, the United States will

3

S/AUSA   DEF   DEF. ATTY.   DATE   11/8/12

be permitted, by agreement of the parties, to restore all original charges either

dismissed or not filed pursuant to this plea agreement. The defendant, in that

circumstance, expressly waives any claim of double jeopardy or right to have this

agreement enforced. In such event, the defendant waives any objections, motions,

or defenses based upon the Statute of Limitations, the Speedy Trial Act, or any other

potential restriction on the re-institution of counts dismissed, or institution of counts

surrendered, as part of the consideration given by the prosecution in this agreement.

      6.    *Admission of Guilt:* The defendant will plead guilty to the Information

because it is guilty of the charges contained in the Information. In pleading guilty,

the defendant acknowledges that the following facts are true and could be proved by

the government beyond a reasonable doubt at trial:

      a.    The defendant is an independent energy company engaged in the

acquisition, exploration, development, and production of crude oil, natural gas, and

natural gas liquids in onshore North America. It was founded in 1908 and is

headquartered in Denver, Colorado. The defendant, through its officers, agents,

employees, subsidiaries, and corporate predecessors, operates or has operated / may

again operate oil and gas mining operations in several western states, including

Montana, Wyoming, and Nebraska.

4

S/AUSA   DEF   DEF.ATTY.   DATE

   b.     The defendant's oil and gas mining operations employ

temporary ponds located adjacent to wells, called reserve pits or produced water

retention pits, used to store fluid accumulated during drilling operations. The fluid

in reserve pits usually contains petroleum and chemical substances harmful to birds

that land on the pits and ingest or become coated with the fluid. Reserve pits can be

made "bird-safe" by various means, including covering them with netting to prevent

birds from coming into contact with the toxic fluids.

   7.     In 2005, agents of the U.S. Fish and Wildlife Service ("USFWS")

documented the deaths of migratory birds at un-netted (or insufficiently netted)

reserve pits at drilling facilities operated by a company called Nance Petroleum

("Nance"), which later became an independent wholly-owned subsidiary of the

defendant operating in Montana, Nebraska, and Wyoming. The USFWS notified

Nance of these mortalities and encouraged Nance to net or otherwise remediate the

sites. The USFWS issued a Notice of Violation to Nance in 2005 for 12 migratory

birds found dead at one of its un-netted reserve pits in Wyoming, which Nance paid.

In 2007, the USFWS conducted another inspection of sites operated by the

defendant in Montana, Wyoming, and Nebraska. The agents found the dead

migratory birds listed in Counts One, Two, and Three at Nance facilities in those

states, which were un-netted or insufficiently netted. In 2008, the agents found

                              5         Rod JAN  bkh  11/6/12
                                        S/AUSA   DEF  DEF.ATTY  DATE

additional dead birds during an inspection of Nance facilities in Wyoming
(contained in Count Two). In all these cases, the birds died as the result of contact
with liquids harmful to wildlife in the pits.

8.      In 2009, after contact from government counsel, Nance began to
address the avian mortality issues at its operations. Nance hired a consulting
company to examine its facilities and prepare an Avian Protection Plan ("APP")
describing appropriate measures for reducing the hazard to avian wildlife and
enhancing its rescue/rehabilitation efforts.

9.      In November 2009, Nance was merged into the defendant. The APP
was completed and presented to the USFWS and government, which approved it in
March 2012.

10.     The defendant's efforts to quantify the scope and cause of avian
mortality at its facilities in Montana, Wyoming, and Nebraska, develop an APP for
reducing future mortalities during the course of its otherwise lawful commercial
activity, and cooperate with and report this information to the USFWS, have
facilitated the government's investigation. In the absence of the defendant's
cooperation and remediation in this matter, the government would have sought a
substantially larger fine and community service payment and a longer term of

6

S/AUSA   DEF   DEF.ATTY.   DATE

probation. The defendant's compliance efforts since 2009 have been substantial and are credited by the government.

11. *Waiver of Venue For Counts Two and Three*: The defendant understands that Counts Two and Three of the Information allege violations based on conduct occurring in Wyoming and Nebraska. The defendant understands it has the right to demand trial or disposition of Count Two in the District of Wyoming, and Count Three in the District of Nebraska. The defendant waives its right to have Counts Two and Three disposed of in those states and agrees that disposition of Counts Two and Three, pursuant to this plea agreement, should occur in the District of Montana.

12. *Maximum Punishment Provided by Law:* The defendant understands the charges to which it will plead guilty are Class B Misdemeanors, each carrying a maximum penalty for an organizational defendant of a fine of not more than $15,000 (per 16 U.S.C. § 707(a)), or twice the gross gain or loss resulting from the unlawful conduct pursuant to 18 U.S.C. § 3571(d); five years' probation (per 18 U.S.C. § 3561(c)(2)); and a special assessment of $50 (per 18 U.S.C. § 3013(a)(1)(B)(ii)). In addition, the Court could impose additional conditions of probation to include the payment of restitution pursuant to 18 U.S.C. § 3563(b), and a conviction could result in additional administrative sanctions such as suspension, debarment, listing to

7



restrict rights and opportunities of the defendant to contract with or receive benefits, loans, or assistance from agencies of the United States.

13.  *Elements of the Charge:* The Migratory Bird Treaty Act provides, in relevant part, that, unless and except as permitted by regulation, it shall be unlawful at any time, by any means or in any manner, to pursue, hunt, take, capture, kill, or attempt to take, capture, or kill any migratory bird. 16 U.S.C. § 703 (emphasis added). "Take" means "to pursue, hunt, shoot, wound, kill, trap, capture, or collect" or to attempt to do so. 50 C.F.R. § 10.12. "Kill" is not further defined. "Migratory birds" protected by the Act are those defined as such in bilateral treaties between the United States, Great Britain, Mexico, Japan, and Russia. 16 U.S.C. § 715j. A list of over 1,000 species of birds protected by the Act, including passerines, waterfowl, raptors, and shorebirds, is found at 50 C.F.R. § 10.13. The Act creates three distinct categories of criminal violations: (1) a general intent felony violation where sale is involved (16 U.S.C. § 707(b)); (2) a specific intent Class A misdemeanor violation for the placement of bait to aid in the taking of a migratory bird (16 U.S.C. § 707(c)); and (3) a strict liability Class B misdemeanor violation for taking a migratory bird (16 U.S.C. § 707(a)). The charges in this Information allege strict-liability Class B misdemeanor "takings."

8

14.     The defendant has been advised of the nature of the charges made against it and the elements of the crimes to which it is entering a guilty plea. The defendant understands that if the case were to go to trial the government would be required to prove each and every element of the crime. The defendant further acknowledges that these are the elements of the crimes charged in Counts One, Two, and Three of the Information:

(a)     On or about the date(s), and within the state and district of Montana and elsewhere as described in the Information, the defendant, through a person or entity acting on its behalf, did take (meaning, in this case, "kill," pursuant to Title 50, Code of Federal Regulations, Section 10.12) a "migratory bird," as that term is defined in Title 50, Code of Federal Regulations, Section 10.12, and as listed in 50 Code of Federal Regulations, Section 10.13.

(b)     The taking was unlawful, in that neither the defendant nor the person or entity acting on its behalf obtained a permit or other valid authorization to take (kill) the migratory bird listed in the charge.

15.     The defendant understands that by entering a guilty plea, the government will not be required to present proof of its guilt and the elements recited herein because there will be no trial if the Court accepts its plea of guilty and the plea agreement of the parties.

9



SAUSA    DEF    DEF.ATTY.    DATE

16. *Recitation of Rights:*

(a)     The government has the right to use any statement made by any representative of the defendant during the entry of plea in this case against the defendant in a subsequent prosecution.

(b)     If the defendant persisted in a plea of not guilty to the charges against it, it would have the right to a public and speedy non-jury trial before a Magistrate Judge.

(c)     The judge would find the facts and determine, after hearing all the evidence, whether or not s/he was persuaded of the defendant's guilt beyond a reasonable doubt.

(d)     The defendant has the right to be represented by counsel at trial and every other stage of these proceedings.

(e)     At a trial the government would be required to present its witnesses and other evidence against the defendant.  The defendant would be able to confront those government witnesses and its attorney would be able to cross-examine them.  In turn, the defendant could present witnesses and other evidence in its own behalf.  If the witnesses for the defendant would not appear voluntarily, it could require their attendance through the subpoena power of the court.

10

SAUSA   DEF   DEF.ATTY.   DATE

(f)     If convicted, and within 10 days of the entry of the Judgment and Commitment, the defendant would have the right to appeal its conviction to the Ninth Circuit Court of Appeals for review to determine if any errors were made which would entitle it to reversal of the conviction.

17.   *Waiver of Rights by Plea:*

(a)     The defendant understands that by pleading guilty pursuant to this agreement it is waiving all the rights set forth in the prior paragraph.  The defendant's attorney and corporate representative understand those rights and the consequences of its waiver of those rights.

(b)     The defendant acknowledges that 18 U.S.C. § 3742 affords it the right to appeal the sentence imposed in this case.

18.   *Corporate Authorization:*  The defendant will provide to the Court and the United States a notarized document certifying the defendant has been properly authorized to plead guilty to the misdemeanor charge set forth in the Information, and to enter into and comply with all provisions of this plea agreement, and that the defendant's designated officer is authorized to take these actions.  The defendant agrees that the designated officer of the defendant shall appear on behalf of the defendant to enter the guilty plea in the District of Montana and shall also appear for imposition of the sentence.

11



SAUSA   DEF   DEF.ATTY.   DATE

19.   *Recommendations:*  The parties acknowledge that, inasmuch as the violations to which the defendant is pleading guilty are Class B misdemeanors, the advisory Sentencing Guidelines do not apply to this case. (U.S.S.G. § 1B1.9). The parties understand that sentencing in this case will be determined by the Court in accordance with 18 U.S.C. § 3553. The parties understand the Court may impose any sentence up to the statutory maximum, regardless of any guideline range computed, and the Court is not bound by any position or recommendation of the parties. The Court is free to make its own findings of facts and consider such sentencing factors which accord with Title 18, U.S.C. § 3553, including the parties' stipulations, the presentence investigation report, and any other relevant information.

20.   The parties acknowledge that the sentencing of the defendant in this matter is entirely within the discretion of the Court. Understanding this, the parties intend to make the following, non-binding, joint sentencing recommendation for the Court's consideration at sentencing:

(a)   The parties will jointly recommend that a fine of $7,500 should be imposed for each Count in this case (for a total of $22,500), directed to the North American Wetlands Conservation Fund for wetlands conservation work in Montana.



SAUSA    DEF    DEF.ATTY.   DATE

(b)   The parties will jointly recommend that the defendant be sentenced to a term of 12 months' probation with the following specific conditions imposed in addition to the standard conditions;

(i)   The defendant will perform community service by making a $7,500 payment to the National Fish and Wildlife Foundation, a private, non-profit, § 501(c)(3) tax-exempt organization, established by Congress in 1984 and dedicated to the conservation of fish, wildlife and plants and the habitat on which they depend. The defendant will not claim this payment as a tax deduction or characterize it in any manner or forum as a donation or contribution.  The funds will be directed to the Foundation with the proviso that they be used in projects designed to enhance migratory bird habitat in Montana, Wyoming and Nebraska.

(ii)   The defendant will continue to implement the Environmental Compliance Plan ("ECP"), attached hereto as Exhibit 1, during the period of probation.  The purpose of the ECP is to minimize and prevent, to the maximum extent reasonably possible, future migratory bird mortalities at the defendant's facilities in Montana, Wyoming, and Nebraska.  As part of implementing the ECP, the defendant and USFWS will meet at least once during the probationary period to discuss the defendant's progress in implementing the ECP, and to address any issues or problems or amendments necessary to ensure the ECP's effectiveness.  Every six months, the defendant shall report in writing to the Court

13



SAUSA   DEF   DEF.ATTY.   DATE

(via the U.S. Probation Office) and the USFWS concerning the progress it has made implementing the ECP.

(c)    Both parties acknowledge that the Court is not bound by the recommendations of either party and may sentence the defendant to a sentence anywhere within statutory maximums provided for the offense of conviction.

21.    *Non-Prosecution or Dismissal:* As part of this plea agreement and in consideration of the defendant's plea of guilty to Counts One, Two, and Three of the Information, the defendant's promises and commitments in this plea agreement, and the defendant's obligations under the ECP, the government agrees to forego, during the period of probation, additional criminal prosecution of the defendant in Montana, Wyoming and Nebraska, for any other criminal environmental offenses involving the unlawful taking of migratory birds or other wildlife which: (a) occurred before the date of this plea agreement; (b) are known to the government at the time of the signing of this plea agreement; and (c) are not presently the subject of negotiation or litigation between the defendant or its subsidiaries, agents, or employees, and the government. The government further agrees to forego prosecution of the defendant, during the period of probation, for any violation of the Migratory Bird Treaty Act in Montana, Wyoming, or Nebraska, relating to the taking of migratory birds by operations covered by the ECP provided that, at the time of any such violation, the defendant is in compliance with the Court's conditions of probation, including but

14

not limited to the ECP (attached hereto or as subsequently amended by the parties). The parties acknowledge that avian deaths at some level will continue to occur and such avian deaths shall not be deemed to violate this provision or any probationary sentence, subject to the limitations stated herein. The defendant understands and agrees that neither this paragraph nor this plea agreement limits the prosecuting authority of any federal, state or local regulatory or prosecuting entity, other than the United States Attorney's Offices for the District of Montana, the District of Wyoming, and the District of Nebraska, and the Environmental Crimes Section. Furthermore, this plea agreement does not provide or promise any waiver of any civil or administrative actions, sanctions, or penalties that may apply, including but not limited to: fines, penalties, claims for damages to natural resources, suspension, debarment, listing to restrict rights and opportunities of defendant to contract with or receive assistance, loans, and benefits from U.S. agencies, licensing, injunctive relief, or remedial action to comply with any applicable regulatory requirement. This plea agreement applies only to violations of the MBTA by the defendant and has no effect on any proceedings against any entity or individual not expressly mentioned herein, including the actual or potential criminal liability of any individuals. Based on information known to date, the government does not anticipate prosecuting any individuals associated with Defendant.

15



22.    *Appeal Waiver:*  The defendant acknowledges that 18 U.S.C. § 3742

affords it the right to appeal the sentence imposed in this case. In consideration for

the government's concessions in this agreement, the defendant waives any and all

right to directly appeal any aspect of the sentence, including conditions of probation.

The defendant also waives its right to challenge the sentence in a collateral

proceeding pursuant to 28 U.S.C. § 2255. This waiver does not prohibit its right to

pursue or maintain such an action arising from facts not known or reasonably

capable of being known at the time of its entry of guilty plea or alleging that it

received ineffective assistance of counsel.

23.    *Voluntary Plea:*  The defendant's attorney acknowledges that no

threats, promises, or representations have been made, nor agreements reached, other

than those set forth in this agreement to induce the defendant to plead guilty.

24.    *Special Assessment/ Financial Obligations:*  The defendant recognizes

that it will be responsible for a mandatory assessment of $50 on each count of the

Information, pursuant to 18 U.S.C. § 3013(a)(1)(B)(ii) of the Comprehensive

Criminal Control Act. The defendant understands and agrees that, pursuant to 18

U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due

and payable immediately and subject to immediate enforcement by the United States.

If the Court imposes a schedule of payments, the defendant understands that the

schedule of payments is merely a minimum schedule of payments and not the only

16

method, nor a limitation on the methods available to the United States to enforce the judgment.

25.   *Entire Agreement:*  Any statements or representations made by the United States, the defendant, or its counsel prior to the full execution of this plea agreement are superseded by this plea agreement.  No promises or representations have been made by the United States except as set forth in writing in this plea agreement.  This plea agreement constitutes the entire agreement between the parties. Any term or condition which is not expressly stated as part of this plea agreement is not to be considered part of the agreement.

MICHAEL W. COTTER,
United States Attorney

ROBERT S. ANDERSON,
Special Assistant United States Attorney
District of Montana;
Senior Counsel
Environmental Crimes Section
Environment and Natural Resources Division
U.S. Department of Justice

MARK STEGER SMITH
Assistant U.S. Attorney

17

SAUSA   DEF   DEF.ATTY.   DATE
11/8/12

I am the authorized corporate representative of SM Energy Co. I have read this plea agreement and every part of it has been carefully reviewed with responsible management and officers of SM Energy Co. and its counsel, Gregory E. Goldberg. I understand the terms of this plea agreement and SM Energy Co. voluntarily agrees to those terms. SM Energy Co. understands its rights, possible defenses, and of the consequences of entering into this plea agreement. No promises or inducements have been made to SM Energy Co. or to me other than those contained in this plea agreement. No one has threatened or forced SM Energy Co. in any way to enter into this plea agreement. SM Energy Co. is satisfied with its representation and counsel by Mr. Goldberg in this matter.

Date: 11/5/12          BY: _____
                       Gregory E. Schrab
                       Corporate EH&S Manager
                       SM Energy Co.


I am SM Energy Co.'s attorney. I have carefully discussed this plea agreement with the authorized representatives of SM Energy Co. I have fully advised SM Energy Co. of the corporation's rights, possible defenses, and the consequences of entering into this plea agreement. I believe the decision of SM Energy Co. to enter into this plea agreement is informed and voluntary.

Date: 11/05/12          BY: _____
                        Gregory E. Goldberg, Esq.
                        Holland & Hart, LLP
                        Counsel for SM Energy C0.

18

I am the authorized corporate representative of SM Energy Co. I have read this plea agreement and every part of it has been carefully reviewed with responsible management and officers of SM Energy Co. and its counsel, Gregory E. Goldberg. I understand the terms of this plea agreement and SM Energy Co. voluntarily agrees to those terms. SM Energy Co. understands its rights, possible defenses, and of the consequences of entering into this plea agreement. No promises or inducements have been made to SM Energy Co. or to me other than those contained in this plea agreement. No one has threatened or forced SM Energy Co. in any way to enter into this plea agreement. SM Energy Co. is satisfied with its representation and counsel by Mr. Goldberg in this matter.

Date: 11/5/12

BY: _____
Gregory E. Schrab
Corporate EH&S Manager
SM Energy Co.


I am SM Energy Co.'s attorney. I have carefully discussed this plea agreement with the authorized representatives of SM Energy Co. I have fully advised SM Energy Co. of the corporation's rights, possible defenses, and the consequences of entering into this plea agreement. I believe the decision of SM Energy Co. to enter into this plea agreement is informed and voluntary.

Date: 11/05/12

BY: _____
Gregory E. Goldberg, Esq.
Holland & Hart, LLP
Counsel for SM Energy C0.


VALERIE HENRY
NOTARY PUBLIC for the
State of Montana
Residing at Billings, Montana
My Commission Expires
December 02, 2014

Valerie Henry

18

SAUSA   DEF   DEF.ATTY. DATE   1/8/13